Debra **MERCER**, Now Debra Moran, Appellee,

v.

George **BRAZIEL**, d/b/a Braziel School Bus Contracting Service, George Braziel, An Individual, Appellant,

and

David Moss, Dennis Warren and the City of Oklahoma City, Defendants,

and

**Farmer's Insurance Co., Inc.,** Intervenor/Appellee.

No. 65263.

Court of Appeals of Oklahoma, Division No. 3.

Nov. 10, 1987.

---

Mike Loyd, Oklahoma City, for appellant.

James L. Percival, Oklahoma City, for appellee/intervenor Farmer's Ins. Co., Inc.

BAILEY, Judge:

This case comes on for review of the trial court's grant of judgment against Appellant George Braziel (Braziel) and for Appellees Debra Moran (Moran) and Intervenor Farmer's Insurance Co., Inc. (Farmers). The subject of this action is a 1981 Corvette automobile. Through depositions, interrogatories, admissions, and testimony of the parties hereto, it was shown Defendant Moss (not a party to this appeal) owned the vehicle, and reported it stolen to his insurer, Farmers, in December, 1981. Farmers paid Moss on the stolen vehicle claim, and obtained salvage title to the vehicle in January, 1982. However, the car had never been stolen, and Moss apparently still had possession of it.

In March, 1982, Moss purchased the salvage rights to another 1981 Corvette in Texas, and apparently changed the identification number on the vehicle reported stolen. The vehicle was then sold by Moss to Defendant Warren (also not a party to this appeal) with monies provided by Braziel, under an agreement between Warren and Braziel to split any profits from subsequent sale of the car. Warren then sold the car with altered identification to Moran's husband. Moran's husband paid for the car with a check to Braziel's business. Moran and her husband were subsequently divorced, and Moran awarded the car.

Moran then placed the car for sale on a consignment sales lot. In May, 1983, the car was seized by police as a stolen car, and the facts of the changed identification came to light. Moran filed suit against the City of Oklahoma City to recover the car, and later added Braziel and the other De-

fendants as parties to the action. City of Oklahoma City was dismissed. Farmers was allowed to intervene as an interest holder in the vehicle. Scarcely a month before scheduled trial, Braziel attempted to amend his answer to set up a third party claim against Farmers, asserting his superior right to the vehicle, but was denied permission to amend by the trial court.

At trial, the court heard the testimony of Appellee Moran and her ex-husband as to the purchase of the car from Warren and Braziel, and testimony of Braziel as to the facts and circumstances surrounding acquisition of the car and subsequent sale to Moran. After consideration of the testimony and other facts adduced through depositions, admissions, and interrogatories appearing in the record, the trial court awarded Moran rescission of the sales contract and restitution of the purchase price of the car against Braziel. The trial court also ordered possession of the car granted to Farmers.

From that judgment, Braziel asserts several propositions of error: (1) error of the trial court in finding as a matter of law breach of warranty of title by Appellant Braziel; (2) error in holding intervenor entitled to possession of the vehicle; and (3) error of the trial court in relying on the admissions and interrogatories filed in the case, but not introduced into evidence, in support of its rulings.

As to Appellant's first proposition of error, there is no issue raised disputing the applicability of the warranty of title provisions of the Uniform Commercial Code as adopted in this State:

"(1) Subject to subsection (2) there is in a contract for sale a warranty by the seller that

(a) the title conveyed shall be good, and its transfer rightful; and

(b) the goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at that time of contracting has no knowledge.

(2) A warranty under subsection (1) will be excluded or modified only by specific language or by circumstances which give the buyer reason to know that the person selling does not claim title in himself or that he is purporting to sell only such right or title in himself or that he is purporting to sell only such right or title as he or a third person may have.

(3) Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringment or the like ..." 12A O.S. 1981 § 2–312.

While we find no Oklahoma authorities directly on-point, other authority clearly establishes a breach of the warranty of title in cases such as the one before us:

"If a seller sells a stolen car or one that is burdened with an unsatisfied perfected security interest, he has almost certainly breached section 2–312 and will be liable in damages to the buyer." *White and Summers, Uniform Commercial Code,* § 9–10, p. 361.

\* \* \* \* \* \*

"If the object of a sale is subject to a valid security interest or a valid claim of title in a third person, clearly the warranty in 2–312 has been breached, and the seller is liable in damages." *White & Summers, supra,* § 9–11, p. 361.

See also, *John St. Auto Wrecking v. Motors Ins. Co.,* 56 Misc.2d 232, 288 N.Y.S.2d 281 (1968); *Kruger v. Bibi,* 3 U.C.C.Rptr. 1132 (NY 1967); *Itoh v. Kimi Sales, Ltd.,* 74 Misc.2d 402, 345 N.Y.S.2d 416 (1973); *Ricklefs v. Clemens,* 216 Kan. 128, 531 P.2d 94 (1975). In *Ricklefs,* seller, a used car dealer sold buyer a 1969 Corvette, which was later identified by the FBI as a stolen vehicle. The Supreme Court of Kansas reasoned that although seller had been an innocent purchaser of the stolen auto, the identification of the vehicle as stolen constituted a sufficient "shadow" on buyer's title so as to constitute a breach of the warranty of title by seller. *Ricklefs,* 531 P.2d 94, 99–100.

"Where one of two innocent parties must suffer through the act or negligence of a third person, the loss should fall upon

the one who by his conduct created the circumstances which enabled the third party to perpetrate the wrong or cause the loss." *Al's Auto Sales v. Moskowitz*, 203 Okl. 611, 224 P.2d 588, 591 (1950). In that case, the Supreme Court affirmed judgment for innocent purchaser and purchaser's mortgagee/security interest holder against original owner, who allowed the car dealer to sell without good title. *Al's Auto Sales*, 224 P.2d 588, 591–592.

■ Under these authorities, we therefore believe the trial court's determination of Appellant's liability to Appellee based on breach of warranty of title was correct. The assertion of claims on the vehicle by the Oklahoma City Police and Appellee Farmers constituted a "shadow" on Appellee Moran's title sufficient to support recovery under a breach of warranty of title theory. The vehicle was bought and paid for by Braziel and/or his company, and Braziel sold to and was paid by Moran and her husband. It was Braziel's acts in purchasing the car with clouded title and reselling to Moran that allowed Moss to perpetrate the wrong. *Al's Auto Sales, supra.* The result under the Uniform Commercial Code is the same as Braziel was the seller of the vehicle which was subject to valid claim of title in a third person, constituting a breach of the warranty of title. *White & Summers, supra;* 12A O.S.1981 § 2–312, supra; *Ricklefs, supra.* We accordingly reject Appellant's first proposition of error.

Resolution of Appellant's second allegation of error regarding the trial court's order of possession of the car to Farmers requires us to address Appellant's third proposition regarding the evidence introduced in support of Farmers claim to possession of the car. At trial, and after Moran and Braziel had rested their cases, Farmers announced in open court that it intended to "stand on the answers" propounded in response to Braziel's interrogatories and requests for admission during discovery, therein showing Farmers' payment of the Moss stolen car claim and salvage title. Appellant Braziel objected to the procedure, as Farmers' responses had never been offered or admitted into evidence. Farmers introduced no evidence at all in support of its claim, other than counsel's "election" to stand on the answers previously tendered during discovery.

■ In the case before us however, there was no evidence introduced which would defeat Farmers' superior claim to the vehicle. Clearly, and although there was no formal offer into evidence of Farmers' discovery responses, we believe Farmers' election to stand on its responses to interrogatories and requests for admission constituted a sufficient offer of that evidence for admission. Rule 13 of the District Court Rules, 12 O.S. 1983 Supp., Ch. 2, App., clearly allows consideration of discovery materials, including responses to interrogatories and requests for admission in the determination of the existence of material fact issues for ruling on summary judgments. Rule 13, Rules of the District Court, *supra.* We view Farmers' position at trial and election to stand on its discovery responses the same as a motion for summary judgment, and hold that the trial court, faced with no contrary evidence to the asserted superior claim of Farmers, properly considered the discovery materials on file as the court would in a motion for summary judgment.

■ Further, we believe the trial court properly determined the legal issue of possession of the vehicle as between Appellant Braziel and Appellee Farmers under the facts of this case. Both parties agree that the insurer, upon payment of an insured's claim, is subrogated to whatever rights the insured had in the insured property. *Standard Ins. of N.Y. v. Ashland Oil & Refining Co.*, 186 F.2d 44 (10th Cir.1950). Thus, Farmers, upon payment of the stolen car claim, was subrogated to *all* rights of its insured, Moss. Upon receipt of the claim, Moss had no rights in the vehicle, and could convey no more title than he had, that is, nothing. *See, Al's Auto Sales, supra; Snethen v. Okla. St. Union of Farmers Educ. and Coop. Assn.*, 664 P.2d 377 (Okl. 1983). Braziel, therefore, got nothing when sold the vehicle by Moss. A good faith purchaser under a defective title can-

not hold against the true owner. *Al's Auto Sales; Snethen, supra.* Thus, as Farmers held all rights of Moss in the vehicle, and Braziel, even as a good faith purchaser, could not defeat the superior claim of the true owner, Farmers, the trial court properly awarded possession of the vehicle to Farmers. Braziel's remedy is against Moss, but that case is not before us.

The orders of the trial court awarding rescission and restitution to Appellee Moran, and awarding possession of the vehicle to Appellee Farmers, are therefore AFFIRMED.

HANSEN, P.J., and HUNTER, J., concur.